**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,                )<br>                                          )<br>                    Plaintiff,            )     **CRIMINAL ACTION**<br>                                          )<br>v.                                        )     No.  05-10050-01-MLB<br>                                          )<br>SCOTT CHEEVER,                            )<br>                                          )<br>                    Defendant.            )<br>                                          ) | |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

This case comes before the court on defendant Scott Cheever's motions to preserve police communications (Doc. 90), preserve physical evidence (Doc. 91), receive notice of co-conspirator statements (Doc. 92), suppress statements (Doc. 93), require investigative officers to retain rough notes (Doc. 95), compel discovery (Doc. 96) and require a bill of particulars (Doc. 97).  The matter has been fully briefed, and the court conducted an evidentiary hearing on June 15, 2005. (Docs. 94, 101, 102, 103, 105, 106, 107, 108.)

**II.  FACTS RELEVANT TO THE MOTION TO SUPPRESS**

On January 19, 2005, the Kansas Highway Patrol Special Response Team (SRT) entered the Cooper residence in Greenwood County, Kansas, in order to arrest defendant, whom they believed had shot and murdered the Greenwood County Sheriff, Matt Samuels.  The SRT deployed gas canisters on the first level of the home.  The SRT then proceeded to climb the stairs and attempted to deploy an additional two canisters in the upstairs bedroom.  While the SRT climbed the stairs, they were being fired upon from the bedroom, presumably by defendant who was

alone in the upstairs bedroom. At least three or four rounds struck the shield of the SRT member in first position. The SRT responded with gunfire. The shots from the bedroom ceased and defendant was found kneeling by the wall with his hands raised. When the SRT attempted to place handcuffs on defendant, he began flailing around and ignoring the officers' verbal commands. The SRT subdued defendant by striking him with closed fists and kicking him with their feet. Defendant was handcuffed and led outside to a waiting ambulance.

Paramedic Nancy Knight requested that the fire department decontaminate defendant by hosing him down with water since a methamphetamine lab was believed to be located in the house. This was done pursuant to the policy of the ambulance company. The normal requirement is to spray the person with water for twenty minutes with his clothing on and then remove the clothing and spray the person for an additional twenty minutes. However, Knight reduced the times due to the outside temperature. Defendant was sprayed for approximately five to ten minutes with his clothing on and then an additional five to ten minutes after his clothing was removed. At all times, defendant was lying on the ambulance gurney.

Once inside the ambulance, defendant was covered with blankets and connected to an oxygen mask and monitor. Knight asked defendant whether he had a medical history or any medical conditions and he responded no. Knight asked defendant if he had smoked or used illegal drugs in the past and he replied yes. At all times, defendant did not appear confused nor did he state that he did not understand the questions. Defendant was coherent at all times and all of his replies were logical. Knight asked if defendant had sustained any injuries

and defendant responded that he felt that his ear was bleeding. Knight did not observe any bleeding from defendant's ear, but she did note that defendant had a small abrasion on his head and neck, bruising on his back and left eye. (Exh. 18).

Kansas Bureau of Investigation Special Agent Halvorsen accompanied defendant in the ambulance. Agent Halvorsen introduced himself to defendant and read the <u>Miranda</u> rights directly from a card. (Exh. 3). Agent Halvorsen then asked defendant if he understood all of his rights. Defendant responded no. Then Agent Halvorsen read each of the five rights separately and questioned defendant if he understood each specific right. Defendant stated that he understood each right. Agent Halvorsen then asked if defendant understood all five of his rights and defendant responded yes. Agent Halvorsen asked defendant if he would agree to talk to him and defendant responded yes. Paramedic Knight heard Agent Halvorsen read defendant his rights and witnessed defendant nodding his head and stating that he understood.

Calvin Shaffer testified that in July 2000 he interviewed defendant during an investigation for armed robbery. During that interview, defendant was given the Miranda warnings. Defendant waived his Miranda rights and signed a voluntary statement. (Exh. 1).

While in the ambulance, defendant did not respond to most of the questions posed by Agent Halvorsen. Paramedic Knight would periodically ask defendant questions to which he consistently responded. Defendant did state that he didn't know that the sheriff was dead, he didn't know who else was in the Cooper residence and he denied that he had been in the Cooper residence. Agent Halvorsen

-3-

observed that defendant was speaking softly. Knight removed the oxygen mask and connected a tube to defendant's nose so that the interview could proceed. Defendant informed Knight that the change made him feel better. During the transport, Knight did not observe any characteristics of methamphetamine influence.

Upon arriving at Greenwood County Hospital, defendant was again decontaminated. After decontamination, defendant was evaluated by Nancy McKenzie, a physician's assistant. During the exam, McKenzie noted the same cuts and abrasions as the paramedic. (Exh. 19). Defendant responded to all questions asked by McKenzie and he did not appear to have trouble responding or understanding. McKenzie also did not observe any signs that are present in methamphetamine use. Defendant did have a high pulse rate and high blood pressure while he was at the hospital.

While in the hospital room, Trooper Ladell observed defendant swaying while sitting on his hospital bed. Ladell thought that defendant appeared to be in a "daze." Ladell then escorted defendant to his squad car to transport him to the jail. Defendant had no difficulty walking to Ladell's car. On the transport to the jail, defendant went to sleep in the back of the vehicle. Upon arriving at the jail, defendant again had no difficulty exiting the car and walking into the jail.

Agent Halvorsen interviewed defendant at the jail. Halvorsen did not restate the Miranda warning before the interview. A videotape of the interview was made, but defendant's responses to Halvorsen's questions cannot be understood, at least by the court. Apparently defendant made no inculpatory admissions. During the interview

defendant invoked his Miranda rights and Agent Halvorsen ceased the questioning.

Defendant seeks to suppress the statements on the basis that he did not voluntarily consent to the interview.

## III. ANALYSIS

### A. Motion to Suppress

Following his arrest, defendant was read his Miranda rights from a pre-printed card. That card was read at the hearing, and the court concludes that it accurately informed defendant of his Miranda rights. Defendant does not contend otherwise. The court finds that defendant chose to waive his rights and speak with Agent Halvorsen.

The decision to waive one's rights against self-incrimination must be "voluntarily, knowingly and intelligently" made. United States v. Curtis, 344 F.3d 1057, 1066 (10th Cir. 2003) (citations omitted). The standard requires a two-pronged inquiry:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal [sic] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Id. (quotations omitted).

In Curtis, the defendant asserted that he was under the influence of marijuana, crack cocaine and alcohol and, therefore, his statement was not voluntary. The evidence showed that the defendant in Curtis was slurring a little bit and at times during the interrogation he

-5-

laid down and closed his eyes. However, Curtis gave answers to the questions and appeared to think through the questions before giving an answer. Id. The Tenth Circuit held that the confession was knowingly and voluntarily given.

Defendant asserts that his statements were not voluntary since he was under the influence of methamphetamine and had been coerced by the rough treatment from the officers. Both the paramedic and physician's assistant testified that they did not observe any signs of methamphetamine use. All officers testified that defendant was able to walk on his own, did not stumble, did not slur his words, spoke clearly and never appeared to be confused. Although there was testimony that at one point that defendant appeared to be in a daze and later swayed on the hospital bed and fell asleep, "there's no indication that his will was overborne." Id. at 1065. At all times defendant appeared lucid and he clearly was selective in the questions that he chose to answer. The paramedic testified that she specifically asked defendant questions when he failed to respond to Agent Halvorsen's questions and defendant consistently answered her questions. A reasonable interpretation of the facts is that defendant's selectiveness demonstrated that he was fully aware of his right to remain silent and he was exercising that right, albeit selectively.

Although the SRT used physical force, the evidence reflected that the officers only used physical force to restrain defendant after he resisted the handcuffs. Given the totality of the circumstances, the court finds that the officers acted with commendable restraint. Moreover, all of defendant's injuries were superficial and occurred

-6-

prior to the interrogation. Defendant was not interrogated during the raid. The interrogation occurred in the ambulance and there was no physical force or threat of force used by Agent Halvorsen.

The only other instance of "rough treatment" was the decontamination performed by the fire department. These actions were taken pursuant to the ambulance company's policy and necessary for the safety of all the individuals that came into contact with defendant since he had been in a methamphetamine lab. There is no evidence that any of the officers participated in the decision to decontaminate defendant. While the decontamination was not a pleasant experience, defendant was not questioned while he was being decontaminated. Rather, Agent Halvorsen read the Miranda rights and interviewed him while he was in the ambulance, covered with blankets. When defendant waived his rights, he was not being decontaminated; no officers had their weapons drawn; no threats were made against him; and no promises were made to him.

Under the totality of the circumstances, the court finds that defendant understood his rights, and that he waived them of his own free will, without any coercion, intimidation, or other inappropriate influence. Therefore, defendant's motion to suppress his statements is DENIED.

**B.   Remaining Motions**

The motions to preserve police communications (Doc. 90), preserve physical evidence (Doc. 91) and require investigative officers to retain rough notes (Doc. 95) are sustained. The government must make a complete inventory of all evidence and provide it to defendant. The government must also give written notice before destroying any

evidence and allow defendant an opportunity to see the evidence and/or agree that the evidence may be destroyed.

The court and defendant find the government's response (Doc. 107) to defendant's motion to compel discovery (Doc. 96) satisfactory.

The court and defendant find the government's response (Doc. 106) to defendant's motion to receive notice of co-conspirator statements (Doc. 92) satisfactory.

The court and defendant find the government's response (Doc. 105) to defendant's motion to require a bill of particulars (Doc. 97) satisfactory.

IT IS SO ORDERED.

Dated this 22nd day of June 2005, at Wichita, Kansas.

/s Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE