IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No.  05-10050-01-MLB |
| ) | |
| SCOTT D. CHEEVER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to strike various statutory and non-statutory aggravating factors from the government's Notice of Intent to Seek the Death Penalty (NOI) (Doc. 133). (Doc. 140.)  The motion has been fully briefed, and is ripe for decision. (Docs. 186, 201).  Defendant's motion is GRANTED in part and DENIED in part, for reasons set forth herein.

**I.  INTRODUCTION**

Defendant is charged in a thirteen-count third superseding indictment with crimes arising out of an altercation with law enforcement on or about January 19, 2005.  (Doc. 200.)  The government claims that defendant and a number of former co-defendants were manufacturing methamphetamine at a rural home in Greenwood County, Kansas.  Responding to a tip that defendant was at this residence, Greenwood County Sheriff Matthew Samuels and two deputies went to the house to investigate.  Sheriff Samuels entered the house.  Shortly thereafter, the government alleges that defendant shot the sheriff twice with a .44 magnum revolver at close range.  Sheriff Samuels died as a result of those wounds.  (Doc. 200.)

Among other offenses, Count Five of the indictment charges defendant with murder through the use of a firearm during the commission of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1), (j)(1). Count Six charges defendant with murder to prevent a witness from communicating to federal officials information relating to the commission of federal crimes, in violation of 18 U.S.C. § 1512(a)(1)(C). The government's theory on Count Six is that defendant killed Sheriff Samuels to prevent him from informing federal officials that defendant was a felon in possession of firearms, that he knowingly possessed stolen firearms, and that defendant may have been involved in a bank robbery. (Doc. 200 at 6.) The crimes charged in Counts Five and Six each carry a maximum sentence of death. The procedural aspects of this case are governed in part by the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591 to 3598.

Defendant filed a number of motions attacking the procedure followed by the government. (Docs. 140 through 146.) In a separate order, the court discussed at length the constitutionality of the FDPA and the proceedings in this case, and disposed of issues raised in Docs. 145 and 146. (Doc. 247.) This memorandum and order focuses on defendant's claims that several aggravating factors alleged by the government are unconstitutionally duplicative. (Doc. 140.)

**II. THE FEDERAL DEATH PENALTY ACT**

The FDPA vests discretion in federal prosecutors to determine whether the government will pursue the death penalty for offenses that

authorize capital punishment.[1]  18 U.S.C. § 3593(a).  If, in the event of a conviction, the government intends to seek the death penalty, it is required to give notice "a reasonable time before trial" that includes any aggravating factors prosecutors intend to prove as justifying execution.  Id.  If a conviction is obtained on a death-eligible offense, the trial proceeds into the second phase of a bifurcated procedure in which the government must prove a number of additional facts in order to vest the jury with discretion to recommend a death sentence.[2]  Id. § 3593(b).

First, as relevant here, the government must establish that the defendant had the mental state described in at least one of four gateway intent factors, which require proof that the defendant:

> (A) intentionally killed the victim;
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as

---

[1] For a similar discussion of the FDPA's procedural requirements, see generally Jones v. United States, 527 U.S. 373, 376-79, 119 S. Ct. 2090, 2096-97, 144 L. Ed. 2d 370 (1999).

[2] Under the FDPA, the penalty phase may be tried to a jury or to the court.  18 U.S.C. § 3593(b).  In this case, defendant has asserted his right to a jury trial, and in all likelihood, a jury will make sentencing determinations if defendant is convicted of murder. Accordingly, for sake of brevity, the court will describe the procedure for the use of a jury because it is highly unlikely that Cheever, or any defendant, would consent to have a judge decide whether he should live or die.

-3-

a direct result of the act.

Id. § 3591(a)(2)(A)-(D).

Next, in order for the jury to consider recommending a sentence of death, the government must prove the existence of at least one statutory aggravating factor enumerated in section 3592(c). Then, and only then, may the jury weigh the existence of any aggravating factors against any mitigating factors in order to arrive at a recommended sentence. Id. § 3593(e). The FDPA further limits the jury's discretion in this matter by stating that, once the initial conditions have been met to begin the weighing process,

> the jury . . . shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

Id.

The FDPA describes the aggravating and mitigating factors in section 3592. Although the FDPA lists a number of mitigating factors, it makes clear that the defendant may present, and the jury must consider, evidence on any mitigating factor. Id. § 3592(a). The act also enumerates several aggravating factors applicable to homicides, such as the one in this case. Id. § 3592(c). However, the FDPA also authorizes the jury to consider any other aggravating factor for which notice has been given. Id. These additional aggravating factors are typically referred to as non-statutory aggravating factors. Jones, 527 U.S. at 378 n.2, 119 S. Ct. at 2097 n.2.

With respect to burdens of proof, the act requires the government

-4-

to prove to a unanimous jury, beyond a reasonable doubt, the gateway intent factors and any aggravating factors.  18 U.S.C. §§ 3591(a)(2), 3593(c), (d).  By contrast, the burden is on the defendant to prove mitigating factors, but only by a preponderance of the evidence.  Id. § 3593(c).  Moreover, any juror who concludes that the defendant has met his burden of establishing the existence of a mitigating factor may consider that factor in determining what sentence to recommend, notwithstanding the fact that other jurors may not believe that the mitigating factor has been proven - in other words, unanimity is not required for jurors to consider mitigating factors.  Id. § 3593(d).  However, unanimity is required to make a final recommendation regarding what sentence to impose.  Id. § 3593(e).

### III. DUPLICATIVE AGGRAVATING FACTORS

In the NOI, the government charges five aggravating factors - three statutory aggravators from the list enumerated at 18 U.S.C. § 3592(c), and four non-statutory aggravating factors.  (Doc. 133 at 3-4.)  The statutory aggravating factors are

> 1. **Grave Risk of Death to Additional Persons.**  The defendant, in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense.  (18 U.S.C. § 3592(c)(5));
>
> 2. **Substantial Planning and Premeditation.**  The defendant committed the offense following substantial planning and premeditation to cause the death of a person.  (18 U.S.C. § 3592(c)(9)).
>
> 3. **Multiple Killings or Attempted Killings.**  The defendant attempted to kill other persons subsequent to the murder of Greenwood County Sheriff Matthew Samuels as part of a single criminal episode.  (18 U.S.C. § 3592(c)(16)).

Id. at 3 (emphasis in original).  The non-statutory aggravating

factors are described as follows:

> 1. **Victim Impact.** The defendant's murder of Greenwood County Sheriff Matthew Samuels caused permanent harm to the family of Greenwood County Sheriff Matthew Samuels and to the people of Greenwood County, Kansas, because of the victim's personal characteristics as an individual human being and the impact of his death upon those persons. See: Payne v. Tennessee, 501 U.S. 808, 825-27 (1991);
>
> 2. **Future Dangerousness.** The defendant represents a continuing danger to the lives and safety of others in the future as is evidenced by the following:
> A) The defendant has a lack of remorse for the murder of Greenwood County Sheriff Matthew Samuels;
> B) His past criminal conduct;
> C) The severity of the instant crimes;
> D) The defendant was in the custody of the Kansas Department of Corrections in parole status at the time these offenses were committed;
> E) The defendant was a parole absconder at the time these offenses were committed;
> F) The defendant's threats to others;
> G) His stated desire to escape from prison;
> H) His lack of desire and/or failure to comply with prison/jail/detention facility rules and regulations;
> I) His stated desire to commit a bank robbery;
> J) His manufacture and use of illegal drugs;
>
> 3. **Murder of a Law Enforcement Officer.** At the time of his murder, Matthew Samuels was engaged in the performance of his official duties as Greenwood County Sheriff.
>
> 4. **Attempted Murder of Multiple Law Enforcement Officers.** During the instant offenses the defendant attempted to murder multiple law enforcement officers while they were engaged in the performance of their official duties.

Id. at 3-4 (emphasis in original).

Relying heavily on the Tenth Circuit's decision in United States v. McCullah, 76 F.3d 1087 (10th Cir. 1996), defendant argues that statutory aggravating factors one and three are unconstitutionally

duplicative; that non-statutory aggravating factors three and four are likewise duplicative; and, that non-statutory aggravating factors three and four are duplicative of statutory aggravating factors one and three. As a remedy, defendant asks the court to force the government to elect between the duplicative factors, and strike the remaining factors from the NOI. (Doc. 140 at 7.)

In <u>McCullah</u>, the court of appeals considered the constitutionality of a death sentence handed down under the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848. 76 F.3d at 1095. The government alleged multiple aggravating factors against the defendant. Although the Tenth Circuit rejected a number of the defendant's arguments regarding improper aggravating factors, the court summarized the facts surrounding the duplicative factors as follows:

> The district court submitted to the jury both the § 848(n)(1)(C) statutory aggravating factor, "intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in death of the victim," and the non-statutory aggravating factor, "committed the offenses as to which he is charged in the indictment." These two factors substantially overlap with one another. In order for the jury to find that Mr. McCullah committed the offenses with which he was charged, the jury necessarily had to conclude that Mr. McCullah did intentionally kill an individual, or did intentionally counsel, command, induce, procure, or cause the killing of an individual, and such killing did result or happen. <u>See</u> 21 U.S.C. § 848(e).
> The district court also submitted to the jury both the Section 848(n)(1)(C) and (n)(1)(D) statutory aggravating factors. The (n)(1)(D) factor requires that the defendant intentionally engages in conduct which he knows creates a grave risk of death and that such death results. 21 U.S.C. § 848(n)(1)(D). This substantially overlaps with the (n)(1)(C) factor which refers to intentional conduct intending that the victim

-7-

> > be killed.  See 21 U.S.C. § 848(n)(1)(C).  Any
> > intentional conduct aimed at producing death is
> > by definition conduct done with knowledge of
> > grave risk of death.  While the factors are not
> > identical per se, the (n)(1)(C) factor
> > necessarily subsumes the (n)(1)(D) factor.

Id. at 1111.  Duplicative aggravating factors can cause an unconstitutional skewing of the weighing process in the selection phase of a capital proceeding.³  Id.  This may occur because duplication of aggravators invites the jury to give undue weight to aggravating conduct by counting it against defendant under two or more overlapping aggravating factors.  See id. at 1112.  However, not all overlap renders the factors constitutionally infirm.  Aggravating factors are unconstitutionally duplicative when one factor "necessarily subsumes" another.  Cooks v. Ward, 165 F.3d 1283, 1289 (10th Cir. 1998) (quoting McCullah, 76 F.3d at 1111).

A.  Statutory Aggravating Factors

Defendant argues that the first statutory aggravating factor, that defendant knowingly created a grave risk of death to other persons, is subsumed within the third statutory aggravator, that he attempted to kill other persons as a part of the same criminal episode in which he murdered Sheriff Samuels.  (Doc. 140 at 3-5.)  Defendant asserts that these two aggravators are directed at the same conduct -

---

³ Defendant notes that the Fifth Circuit has interpreted Jones v. United States, 527 U.S. 373, 119 S. Ct. 2090, 144 L. Ed. 2d 370 (1999), as implicitly rejecting this part of McCullah.  (Doc. 140 at 3 (citing United States v. Robinson, 367 F.3d 278, 292-93 (5th Cir. 2004)).  Defendant argues vigorously against that conclusion, and the government does not press the argument.  (Docs. 140 at 3; 186 at 8-9.) A closer reading of Jones shows the Court was merely noting that it had not passed on this aspect of McCullah.  Jones, 527 U.S. at 398, 119 S. Ct. at 2107 (plurality opinion).  This court follows the law as expounded by the Tenth Circuit and the Supreme Court.

-8-

his actions against the other law enforcement officers after he allegedly shot the sheriff. Id. at 4.

In its response, the government counters defendant's argument by explaining that these two aggravating factors are aimed at defendant's conduct toward two totally different groups of people. The government explains that the multiple attempted killings is focused on defendant's efforts to shoot the other sheriff's deputies and highway patrolmen who responded to the scene. (Doc. 186 at 3, 5-7, 10-11.) Conversely, the government asserts that the grave risk of death factor is directed toward defendant's conduct in relation to two former co-defendants who were at the residence when he was shooting, Darrell and Belinda Cooper. Id.

More specifically, the government notes that, under its theory of the case, defendant knowingly fired at the other law enforcement officers with the intent to kill them. However, the government asserts that the Coopers were in or near a small kitchen area on the first floor of the house when sheriff's deputies entered to retrieve the wounded sheriff. The sheriff was also lying in or near the kitchen. According to the government, while the deputies attempted to drag the sheriff from the house, defendant fired two rounds from his .44 magnum handgun down the stairwell toward the officers. The bullets struck the kitchen floor and a nearby wall. The government intends to prove that the Coopers were located in close proximity to the officers, and that defendant knew this, such that he consciously ignored the risk to the Coopers when he fired in their direction. Thus, the government argues, since defendant did not intend to shoot the Coopers, but nonetheless acted with complete indifference to their

-9-

safety, and based on the Coopers' proximity to the defendant's line of fire, defendant knowingly created a grave risk of death to the Coopers. Id.

The government's argument is well taken, assuming, of course, that its evidence turns out as it anticipates. Although McCullah held that a grave risk of death aggravator was subsumed within another factor focusing on "intentional conduct aimed at producing death," it is clear that both of these aggravating factors were focused on the defendant's conduct toward one individual. McCullah, 76 F.3d at 1108, 1111. That is to say, both aggravators were directed at the defendant's mental state in relation to a single murder victim. In that unique circumstance, the intentional conduct aggravator was subsumed within the grave risk of death aggravator because "[a]ny intentional conduct aimed at producing death is by definition conduct done with knowledge of grave risk of death." Id. at 1111.

On the other hand, when aggravating factors account for a defendant's conduct or mental state toward different individuals or groups of individuals, courts have consistently found no unconstitutional duplication.[4] See, e.g., United States v. Barnette, 211 F.3d 803, 819-20 (4th Cir. 2000); United States v. Mayhew, 380 F.

---

[4] This conclusion should not be interpreted as suggesting that the government could legitimately parse aggravating factors to the point of having a unique aggravating factor for each affected individual. In other words, the court is not suggesting that the government could have alleged grave risk of death to Darrell Cooper as one factor and grave risk of death to Belinda Cooper as another factor. That issue is not before the court, and is quite a different question than the one presented here. Rather, the court simply holds that the grave risk of death aggravator does not impermissibly overlap with the multiple attempted killings aggravator when there is no overlap between the victims of the two alleged aggravating circumstances.

-10-

Supp. 2d 936, 948 n.15 (S.D. Ohio 2005); <u>United States v. Le</u>, 327 F. Supp. 2d 601, 613-14 (E.D. Va. 2004); <u>United States v. Bin Laden</u>, 126 F. Supp. 2d 290, 300 (S.D.N.Y. 2001). Indeed, <u>Barnette</u> and <u>Le</u> dealt with situations similar to this case. In both cases, the government alleged the grave risk of death aggravating factor under the FDPA based, at least in part, on the defendants' indifference toward bystanders who were not intended victims; and in both cases, the courts approved of the government's approach.

In this case, the grave risk of death aggravator is focused on defendant's indifference to the Coopers' safety, and the multiple attempted killings aggravator is focused on defendant's intentional efforts to shoot other law enforcement officers. These factors are not duplicative. Defendant's arguments to the contrary are rejected.

B. Non-statutory Aggravating Factors

Defendant next argues that the third non-statutory aggravating factor, murder of a law enforcement officer, is impermissibly duplicative of the fourth non-statutory aggravator, attempted murder of multiple law enforcement officers. (Docs. 140 at 6-7; 201 at 2.) However, like the two contested statutory aggravators, these two factors direct the jury's attention to distinct conduct directed at different groups of people.

The murder of a law enforcement officer factor focuses the jury on the fact that the actual murder victim, Sheriff Samuels, was a peace officer engaged in his official duties when he was killed. It involves proof of the sheriff's status as a peace officer, defendant's knowledge of that status, and the fact that defendant actually killed this victim. By contrast, the attempted murder of law enforcement

-11-

officers factor focuses on a separate group of peace officers engaged in their official duties, defendant's knowledge of their status as law enforcement personnel, and his separate actions toward them, which must be proven to amount to attempted murder.

Moreover, the facts alleged in this case show that defendant's actions against the highway patrolmen occurred some time after his attack on the sheriff.  Defendant fired on at least one group of highway patrolmen as they made their way to the second floor of the residence in an effort to apprehend him.  This incident was distinct in time, location, and circumstances from the initial attack against Sheriff Samuels such that it merits separate attention.  It directs the jury to consider totally separate conduct by defendant. (Doc. 186 at 7-8.)

These circumstances are in sharp contrast to the situation condemned in McCullah, where the court of appeals found it objectionable that the jury was asked to consider two factors highlighting the defendant's mental state as he engaged in a single act of violence against a single victim.  Finding that one of the mental states "necessarily subsume[d]" the other, the court concluded that this "double counting" of aggravating factors worked an unconstitutional skewing of the weighing process.  McCullah, 76 F.3d at 1111.  However, the determining factor in McCullah appears to be that in evaluating the defendant's culpability in this single murder, the jury was asked to consider two separate mental states: 1) that the defendant intentionally engaged in conduct that he knew would pose a grave risk of death to the victim, and that the victim died; and 2) that the defendant intentionally engaged in conduct with the intent

-12-

that the victim be killed.  Id.   The Tenth Circuit found that the first factor was subsumed within the second because, in intentionally engaging in conduct with the intent that the victim be killed, the defendant necessarily engaged in conduct that he knew would pose a grave risk of death to that same victim.  See id.

In this case, defendant allegedly engaged in multiple acts of violence against multiple people over a period of several hours and under different circumstances.  (Doc. 186 at 4-8.)  The court finds that McCullah's concern over double counting would not apply to these contested non-statutory aggravating factors under the facts of this case.   Indeed, the focus at the selection phase of a capital proceeding is on individualized sentencing that considers the facts and circumstances of this defendant and of the crime or crimes for which he is charged.  See Clemons v. Mississippi, 494 U.S. 738, 748, 110 S. Ct. 1441, 1448, 108 L. Ed. 2d 725 (1990); Zant v. Stephens, 462 U.S. 862, 879, 103 S. Ct. 2733, 2744, 77 L. Ed. 2d 235 (1983).  Since non-statutory aggravating factors under the FDPA are only selection factors, their sole purpose is to accomplish the goal of individualized sentencing.  See 18 U.S.C. § 3593(e) (directing the jury to consider non-statutory aggravating factors only after it has found a defendant eligible for the death penalty based on finding at least one gateway intent factor and one statutory aggravating factor). The court finds that the two non-statutory aggravating factors at issue, murder of a law enforcement officer and attempted murder of multiple law enforcement officers, under the facts of this case, appropriately direct the jury's attention to specific, distinct conduct by defendant in a manner that is not unconstitutionally

duplicative.

C.  Overlap Between Statutory and Non-Statutory Aggravators

Finally, defendant argues that the two contested non-statutory aggravating factors impermissibly overlap with the multiple attempted killings statutory aggravator.[5]  (Docs. 140 at 6-7; 201 at 3.)  To the extent this argument suggests that the multiple attempted killings aggravator is duplicative of the murder of a law enforcement officer non-statutory aggravating factor, the court rejects this notion for the same reasons expressed in the preceding section.  On the other hand, defendant's claim that the multiple attempted killings aggravator is duplicative of the attempted murder of multiple law enforcement officers aggravator has merit.

The multiple attempted killings aggravator expressly states that defendant "attempted to kill other persons subsequent to the murder of Greenwood County Sheriff Matthew Samuels as part of a single criminal episode."  (Doc. 133 at 4.)  It is quite clear from the government's briefs that the only people defendant is alleged to have attempted to kill in this episode were law enforcement officers.  Thus, if the government can prove that defendant attempted to murder multiple law enforcement officers, as alleged in the fourth non-statutory aggravating factor, prosecutors will have necessarily proven

---

[5] In his initial brief, defendant also argued that these two non-statutory aggravators overlapped with the first statutory aggravator, grave risk of death to other persons.  (Doc. 140 at 6.)  After the government clarified that the grave risk of death factor was focused on the Coopers, and not police officers, defendant appears to have dropped his argument as to the overlap with this first statutory aggravator.  (Doc. 201 at 2 (arguing only that the non-statutory aggravating factors were duplicative with "Statutory Aggravating Factor 3").)

that defendant attempted to kill "other persons" in this episode, as contemplated by the multiple attempted killings statutory aggravator. Therefore, the multiple attempted killings statutory aggravating factor is "necessarily subsume[d]" by the attempted murder of multiple law enforcement officers aggravator. McCullah, 76 F.3d at 1111. Accordingly, the government must elect between these two aggravating factors. The government has until March 31, 2006, to make its election and amend the NOI to reflect that decision.

   IT IS SO ORDERED.

   Dated this   29th   day of March 2006, at Wichita, Kansas.


                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE