# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No.  05-10050-01-MLB |
| | ) | |
| SCOTT D. CHEEVER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case comes before the court on defendant's motion to strike the victim impact non-statutory aggravating factor from the government's Notice of Intent to Seek the Death Penalty (NOI) (Doc. 133).  (Doc. 141.)  In the alternative, defendant asks the court to limit the victim impact evidence that the government may introduce, and to compel the government to provide more details about the victim impact evidence that it will be permitted to present.  Id. at 6.  The motion has been fully briefed, and is ripe for decision.  (Docs. 186, 201).  Defendant's motion is GRANTED in part and DENIED in part, for reasons set forth herein.

## I.  INTRODUCTION

Defendant is charged in a thirteen-count third superseding indictment with crimes arising out of an altercation with law enforcement on or about January 19, 2005. (Doc. 200.)  The government claims that defendant and a number of former co-defendants were manufacturing methamphetamine at a rural home in Greenwood County, Kansas.  Responding to a tip that defendant was at this residence, Greenwood County Sheriff Matthew Samuels and two deputies went to the

house to investigate.  Sheriff Samuels entered the house.  Shortly thereafter, the government alleges that defendant shot the sheriff twice with a .44 magnum revolver at close range.  Sheriff Samuels died as a result of those wounds.  (Doc. 200.)

Among other offenses, Count Five of the indictment charges defendant with murder through the use of a firearm during the commission of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1), (j)(1).  Count Six charges defendant with murder to prevent a witness from communicating to federal officials information relating to the commission of federal crimes, in violation of 18 U.S.C. § 1512(a)(1)(C).  The government's theory on Count Six is that defendant killed Sheriff Samuels to prevent him from informing federal officials that defendant was a felon in possession of firearms, that he knowingly possessed stolen firearms, and that defendant may have been involved in a bank robbery.  (Doc. 200 at 6.)  The crimes charged in Counts Five and Six each carry a maximum sentence of death.  The procedural aspects of this case are governed in part by the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591 to 3598.

Defendant filed a number of motions attacking the procedure followed by the government.  (Docs. 140 through 146.)  In a separate order, the court discussed at length the constitutionality of the FDPA and the proceedings in this case, and disposed of issues raised in Docs. 145 and 146.  (Doc. 247.)  This memorandum and order focuses on defendant's arguments relating specifically to the victim impact aggravating factor.  (Doc. 141.)

## II.  THE FEDERAL DEATH PENALTY ACT

The FDPA vests discretion in federal prosecutors to determine

-2-

whether the government will pursue the death penalty for offenses that authorize capital punishment.[1]  18 U.S.C. § 3593(a).  If, in the event of a conviction, the government intends to seek the death penalty, it is required to give notice "a reasonable time before trial" that includes any aggravating factors prosecutors intend to prove as justifying execution.  Id.  If a conviction is obtained on a death-eligible offense, the trial proceeds into the second phase of a bifurcated procedure in which the government must prove a number of additional facts in order to vest the jury with discretion to recommend a death sentence.[2]  Id. § 3593(b).

First, as relevant here, the government must establish that the defendant had the mental state described in at least one of four gateway intent factors, which require proof that the defendant:

> (A) intentionally killed the victim;
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that

---

[1] For a similar discussion of the FDPA's procedural requirements, see generally Jones v. United States, 527 U.S. 373, 376-79, 119 S. Ct. 2090, 2096-97, 144 L. Ed. 2d 370 (1999).

[2] Under the FDPA, the penalty phase may be tried to a jury or to the court.  18 U.S.C. § 3593(b).  In this case, defendant has asserted his right to a jury trial, and in all likelihood, a jury will make sentencing determinations if defendant is convicted of murder. Accordingly, for sake of brevity, the court will describe the procedure for the use of a jury because it is highly unlikely that Cheever, or any defendant, would consent to have a judge decide whether he should live or die.

-3-

> participation in the act constituted a reckless
> disregard for human life and the victim died as
> a direct result of the act.

Id. § 3591(a)(2)(A)-(D).

Next, in order for the jury to consider recommending a sentence of death, the government must prove the existence of at least one statutory aggravating factor enumerated in section 3592(c). Then, and only then, may the jury weigh the existence of any aggravating factors against any mitigating factors in order to arrive at a recommended sentence. Id. § 3593(e). The FDPA further limits the jury's discretion in this matter by stating that, once the initial conditions have been met to begin the weighing process,

> the jury . . . shall consider whether all the
> aggravating factor or factors found to exist
> sufficiently outweigh all the mitigating factor
> or factors found to exist to justify a sentence
> of death, or, in the absence of a mitigating
> factor, whether the aggravating factor or factors
> alone are sufficient to justify a sentence of
> death.

Id.

The FDPA describes the aggravating and mitigating factors in section 3592. Although the FDPA lists a number of mitigating factors, it makes clear that the defendant may present, and the jury must consider, evidence on any mitigating factor. Id. § 3592(a). The act also enumerates several aggravating factors applicable to homicides, such as the one in this case. Id. § 3592(c). However, the FDPA also authorizes, but does not require, the jury to consider any other aggravating factor for which notice has been given. Id. These additional aggravating factors are typically referred to as non-statutory aggravating factors. Jones, 527 U.S. at 378 n.2, 119 S.

-4-

Ct. at 2097 n.2.  As particularly relevant here, the FDPA expressly authorizes the presentation of victim impact evidence, using the following language:

> The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information.

18 U.S.C. § 3593(a).

With respect to burdens of proof, the act requires the government to prove to a unanimous jury, beyond a reasonable doubt, the gateway intent factors and any aggravating factors.  <u>Id.</u> §§ 3591(a)(2), 3593(c), (d).  By contrast, the burden is on the defendant to prove mitigating factors, but only by a preponderance of the evidence.  <u>Id.</u> § 3593(c).  Moreover, any juror who concludes that the defendant has met his burden of establishing the existence of a mitigating factor may consider that factor in determining what sentence to recommend, notwithstanding the fact that other jurors may not believe that the mitigating factor has been proven - in other words, unanimity is not required for jurors to consider mitigating factors.  <u>Id.</u> § 3593(d). However, unanimity is required to make a final recommendation regarding what sentence to impose.  <u>Id.</u> § 3593(e).

### III. VICTIM IMPACT EVIDENCE

Defendant first argues that victim impact evidence is <u>per se</u> unconstitutional.  (Doc. 141 at 1-2.)  However, he properly concedes that his position is foreclosed by binding precedent.  <u>Id.</u> at 2.  It is well-established that a capital jury may consider victim impact

-5-

evidence in the selection phase of a death penalty case without offending the Constitution.  See Payne v. Tennessee, 501 U.S. 808, 825, 111 S. Ct. 2597, 2608, 115 L. Ed.2d 720 (1991).  Nevertheless, there are limitations on the evidence that can be presented in this area.  See, e.g., Hain v. Gibson, 287 F.3d 1224, 1238-39 (10th Cir. 2002) (holding that it was improper for victims to testify regarding the punishment the defendant should receive or the heinousness of the underlying crime); see also United States v. Sampson, 335 F. Supp. 2d 166, 187 (D. Mass. 2004).  The court will not attempt to present a dissertation on the entire subject of victim impact evidence in a capital case.  Nor will the court endeavor to divine what the government might try to present and render a preemptive ruling.  The government will be expected to limit its victim impact evidence to that which is proper under the Constitution, particularly in light of controlling case law.  Any objections to that evidence will have to be taken up at trial, or at such time before trial as it becomes apparent that a potentially improper use of this type of evidence is being contemplated by the prosecution.

Defendant next argues that the FDPA limits victim impact evidence to that of victims and their family members.  Accordingly, he argues, victim impact testimony by friends, co-workers, or any non-family members is statutorily prohibited.  (Doc. 141 at 3-4.)  In particular, defendant bases his argument on the following language from 18 U.S.C. § 3593(a):

> The factors for which notice is provided under
> this subsection may include factors concerning
> the effect of the offense on the victim and the
> victim's family, and may include oral testimony,
> a victim impact statement that identifies the

> victim of the offense and the extent and scope of
> the injury and loss suffered by the victim and
> the victim's family, and any other relevant
> information.

Since this discussion of victim impact evidence speaks only in terms
of family members, defendant reasons that Congress intended to limit
victim impact testimony to family members. (Doc. 141 at 4.) In
further support of this conclusion, defendant relies on 18 U.S.C. §
3510(b), which establishes a victim's right to attend a capital trial,
notwithstanding the fact that the victim might be called upon to
present evidence at the sentencing phase, including victim impact
evidence. (Doc. 202 at 3.) Subsection (c) of section 3510 then
incorporates the definition of the term "victim" provided in 42 U.S.C.
§ 10607(e)(2), which states:

> (2) the term "victim" means a person that has
> suffered direct physical, emotional, or pecuniary
> harm as a result of the commission of a crime,
> including--
>
> (A) in the case of a victim that is an
> institutional entity, an authorized
> representative of the entity; and
>
> (B) in the case of a victim who is under 18 years
> of age, incompetent, incapacitated, or deceased,
> one of the following (in order of preference):
>
> (i) a spouse;
> (ii) a legal guardian;
> (iii) a parent;
> (iv) a child;
> (v) a sibling;
> (vi) another family member; or
> (vii) another person designated by the court.

Reading these passages collectively, defendant argues that they evince
congressional intent to limit victim impact evidence to that of the
victim's family. (Doc. 202 at 4.)

Although Payne dealt with victim impact testimony offered by a

-7-

victim's grandmother, the Court chose language approving of victim impact evidence far broader than familial sources.  In criticizing the decisions in <u>South Carolina v. Gathers</u>, 490 U.S. 805, 810-11, 109 S. Ct. 2207, 2210-11, 104 L. Ed. 2d 876 (1989) and <u>Booth v. Maryland</u>, 482 U.S. 496, 509, 107 S. Ct. 2529, 2536, 96 L. Ed. 2d 440 (1987), which <u>Payne</u> ultimately overruled in relevant part, the Court noted that those decisions "barred [the government] from either offering a quick glimpse of the life which a defendant chose to extinguish . . . <u>or</u> demonstrating the loss to the victim's family <u>and to society</u> which has resulted from the defendant's homicide."  <u>Payne</u>, 501 U.S. at 822, 111 S. Ct. at 2607 (internal quotations and citations omitted) (emphasis added).  The underlined language from this quote clearly recognizes that the relevant impact may extend beyond the victim's family, and encompass a broader societal interest.  Continuing with that theme, the Court re-emphasized the point when it said,

> [T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too <u>the victim is an individual whose death represents a unique loss to society and in particular to his family</u>.

<u>Id.</u> at 825, 111 S. Ct. at 2608 (quotation omitted) (emphasis added). Once again, the underlined language clearly approves of a range of victim impact evidence that extends beyond the murder victim's family. While defendant characterizes this as dicta because the issue before the Court was a statement by a family member (Doc. 202 at 5), the Tenth Circuit has stated that "this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by

later statements." <u>United States v. Nelson</u>, 383 F.3d 1227, 1232 (10th Cir. 2004) (quotation omitted). Accordingly, the court finds no <u>per se</u> constitutional impediment to victim impact evidence derived from sources beyond the murder victim's family. Thus, the issue here is simply whether the FDPA prohibits such evidence. In response to that issue, the government counters with several cases in which individuals outside the victim's family have been permitted to testify. (Doc. 187 at 7-9.) While some of these cases involved the FDPA, others were habeas corpus cases involving state murder convictions. In deciding this particular question, only cases interpreting the FDPA are relevant.

As an initial matter, the court notes that defendant failed to cite a single case upholding his position that the FDPA precludes victim impact evidence from or relating to non-familial victims. Instead, he bases his entire argument on the language of the FDPA. However, that language is not as clear on this subject as defendant represents. First, while the operative language from section 3593(a) generally speaks in terms of a victim's family members, that section is written in extremely permissive language. Reduced to bare bones, it states that "[t]he factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, . . . and any other relevant information." 18 U.S.C. § 3593(a). This language is routinely interpreted to authorize a wide range of non-statutory aggravating factors, limited only by the Constitution and the facts of the case. <u>See, e.g.</u>, <u>United States v. Fell</u>, 372 F. Supp. 2d 753, 765 (D. Vt. 2005) (concluding that murder committed to avoid having victim report

-9-

carjacking to authorities was appropriate non-statutory aggravator under FDPA); United States v. Glover, 43 F. Supp. 2d 1217, 1223-28 (D. Kan. 1999) (approving the following non-statutory aggravating factors in FDPA case: defendant engaged in intentional conduct resulting in death of victim; victim impact; lack of remorse; and future dangerousness). Thus, if section 3593(a) can be seen as authorizing such non-statutory aggravators as lack of remorse, it would be strange indeed to hold that it somehow precluded constitutionally permissible evidence regarding the loss occasioned by friends, co-workers, and other close associates of the deceased.

Furthermore, the additional victims' rights statutes cited by defendant are not as dispositive as he makes them appear. For example, 18 U.S.C. § 3510, on which defendant relies for its language regarding "the victim and the victim's family," may be more detrimental than helpful to his position. The full text of subsection (b) reads

> Notwithstanding any statute, rule, or other provision of law, a United States district court shall not order any victim of an offense excluded from the trial of a defendant accused of that offense because such victim may, during the sentencing hearing, testify as to the effect of the offense on the victim and the victim's family or as to any other factor for which notice is required under section 3593(a).

(Emphasis added). Obviously, the first underlined "victim" cannot be the murder victim, because the referenced victim's testimony is contemplated by this subsection. Instead, this refers to some other victim who has suffered harm as a result of the capital offense in question. Likewise, the second underlined "victim" refers to this same person through the use of the descriptor "such victim."

-10-

Nevertheless, defendant seems to imply that the final reference to "the victim and the victim's family" must somehow be referring to the family of the murder victim, thereby further evincing Congress' intent to limit victim impact testimony to the murder victim's family members. (Doc. 202 at 3-4.) But this reading is contrary to the language and the context of section 3510(b). This entire subsection is referring to a living victim who has suffered some harm as a result of the murder of another. Nothing in subsection (b) limits this victim to being someone from the murder victim's family.

In an effort to clarify who may be a victim, defendant then leads the court to 42 U.S.C. § 10607(e)(2). (Doc. 202 at 3-4.) In so doing, defendant omits the fact that the definition provided in section 10607 is made relevant by 18 U.S.C. § 3510(c), which states, "As used in this section, the term 'victim' <u>includes</u> all persons defined as victims in section 503(e)(2) of the Victims' Rights and Restitution Act of 1990 [codified at 42 U.S.C. § 10607(e)(2)]." (Emphasis added.) As the underlined word indicates, the referenced definition is non-exclusive. In other words, had Congress intended to limit the term "victim" in section 3510 to the definition provided in section 10607, it would have used more restrictive language. Instead, section 10607 merely shows one definition of "victim" that was contemplated by section 3510.

Turning now to 42 U.S.C. § 10607(e)(2), the critical part of that definition defines a victim as one who "has suffered direct physical, emotional, or pecuniary harm as a result of the commission of a crime." Certainly close friends and co-workers of a murder victim have the potential to suffer emotional harm as a result of the

-11-

killing.  This definition does little to support defendant's argument.
Thus, to the extent that these statutory provisions, which are not
part of the FDPA, shed any light on Congress' intent regarding who is
a victim under the FDPA, the court finds that they support a broad
definition of the term "victim," which includes individuals beyond the
murder victim's family.

Finally, the court considers federal case law on this matter.
Although no court appears to have dealt squarely with the argument
that defendant presents here, a number of courts have permitted victim
impact evidence by non-family members in an FDPA proceeding.  For
example, in United States v. Allen, the Eighth Circuit approved of
victim impact testimony from two co-workers and one former co-worker
of the murder victim.  247 F.3d 741, 779 (8th Cir. 2001), vacated 536
U.S. 953, 122 S. Ct. 2653, 153 L. Ed. 2d 830 (2002) (remanding for
reconsideration in light of Ring v. Arizona, 536 U.S. 584, 122 S. Ct.
2428, 153 L. Ed. 2d 556 (2002)), and aff'd on reh'g 357 F.3d 745 (8th
Cir. 2004) (en banc).  Similarly, in United States v. Battle, the
Eleventh Circuit specifically approved of victim impact testimony from
three prison guards in a case where another prison guard had been
murdered by an inmate.  173 F.3d 1343, 1348-49 (11th Cir. 1999).
Other courts have reached similar conclusions.  See, e.g., United
States v. Nelson, 347 F.3d 701, 712-13 (8th Cir. 2003) (approving
victim impact testimony by murder victim's classmate, her teacher, and
another friend); United States v. Bernard, 299 F.3d 467, 478 (5th Cir.
2002) (finding no fault with victim impact testimony from a friend and
former co-worker).

Indeed, the Tenth Circuit permitted similar testimony in United

-12-

States v. McVeigh, 153 F.3d 1166 (10th Cir. 1998).  In that case, the government presented victim impact testimony from thirty-eight witnesses.  Id. at 1216.  Besides family members and survivors of the bombing, testimony was also received from "one employee of the Murrah Building day care center, and eight rescue and medical workers."  Id. These individuals were not family members.  The day care center worker would be classified as a co-worker of murdered victims, and the rescue workers had no apparent relationship with those who were killed.  See id.

The defendant did not challenge this evidence on a statutory basis.  See id. at 1216 n.42.  Thus, McVeigh, like the other appellate cases just cited, did not deal directly with the question presented here.  Instead, it is simply another example of a case in which this type of evidence appears to have gone unchallenged and unaddressed by the reviewing court.  Nevertheless, the court of appeals made one more comment in McVeigh that seems noteworthy.  The court observed that, after making a number of evidentiary rulings just prior to commencement of the penalty phase, the district court in McVeigh stated that it would allow victim impact evidence addressing the loss of people to an "agency."  Id. at 1221.  The court of appeals expressed no criticism of that remark, and promptly proceeded to express its satisfaction with the overall issue of victim impact evidence in the case.  Id. at 1222.  If an agency can be a victim for purposes of 18 U.S.C. § 3593(a), it would certainly seem that close friends and co-workers can be victims as well.

In sum, the court finds that Congress intended to permit prosecutors wide latitude in alleging non-statutory aggravating

-13-

factors.   Had Congress intended to circumscribe the realm of permissible victim impact testimony, it would have used more definitive language.  Friends, co-workers, and the like are certainly victims in the broader sense of those who suffer emotionally, and perhaps physically or in a pecuniary manner, as a result of a murder. Considering the broad, permissive language with which the FDPA and the other cited statutes define and use the term "victim," the FDPA should not be read to limit victim impact evidence to only family members of deceased victims.

As an alternative remedy, defendant asks that the government be ordered to render a "concise but specific summation of the evidence that the Government proposes to admit."  (Doc. 141 at 6.)   The government has responded with a very generalized summation of what it intends to offer as proof of the victim impact aggravator.  (Doc. 187 at 8.)  However, that summation has failed to identify any particular witnesses.

Under similar circumstances, other courts have directed some elaboration by the government on this topic.  See, e.g., United States v. Taylor, 316 F. Supp. 2d 730, 743 (N.D. Ind.2004) (directing government to provide additional notice regarding "who will offer victim impact evidence, the relation the witness is to the victim, the form of testimony (i.e., written or oral statement) and a summary of the anticipated testimony"); United States v. Llera Plaza, 179 F. Supp. 2d 464, 475 (E.D. Pa. 2001) (ordering government to submit an outline of its proposed victim impact testimony); United States v. Cooper, 91 F. Supp. 2d 90, 111 (D.D.C. 2000) (ordering government to amend NOI "to include more specific information concerning the extent

-14-

and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to each victim's 'personal characteristics' that the government intends to prove"). In <u>Glover</u>, another FDPA case from this district, Chief Judge Lungstrum addressed the disclosure of the details of victim impact evidence as follows:

> The court finds that the defendant is entitled to greater specificity regarding this factor, to wit, which members of the family have suffered, the nature of their suffering, and the nature of the "permanent harm." For example, whether members of the family sought counseling or other medical treatment, such as hospitalization, and whether and to what extent members of the family suffered financial harm, are relevant considerations in discerning whether this factor is indeed "aggravating" in this case. The court, in the exercise of its inherent authority, directs the government to more specifically articulate the nature of this aggravator by March 12, 1999.

<u>Glover</u>, 43 F. Supp. 2d at 1225.

The court finds these cases represent a reasonable accommodation of the defendant's right to prepare his defense and the government's right not to be subjected to broad discovery in a criminal case. Accordingly, the government shall provide defendant with notice of the government's proposed witnesses who will provide victim impact testimony, the relationship of each witness to the deceased, and a brief summary of the substance of each witness' testimony.

Additionally, in a previous order ruling on a number of defendant's constitutional claims, the court reserved the matter of directing the government to provide additional disclosure on the impact of Sheriff Samuel's death to the people of Greenwood County,

-15-

Kansas.  (Doc. 247).  In addition to the disclosure ordered in the preceding paragraph, the government is also directed to specifically identify the impact to the people of Greenwood County that the government contemplates under this aggravator.  The government shall also identify the witnesses whom it believes will provide evidence on this aspect of the victim impact aggravating factor.  All disclosures contemplated by this order shall be made by April 14, 2006.

IT IS SO ORDERED.

Dated this   29th   day of March 2006, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE