## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No.  05-10050-01-MLB |
| | ) | |
| SCOTT D. CHEEVER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case comes before the court on defendant's motion to strike the gateway intent factors and the statutory aggravating factors from both the indictment and the government's notice of intent to seek the death penalty (NOI), and to strike the non-statutory aggravating factors from the NOI.  (Doc. 144.)  The government filed a response. (Doc. 189.)  Defendant's motion is denied for reasons set forth herein.

## I.  INTRODUCTION

Defendant is charged in a thirteen-count third superseding indictment with crimes arising out of an altercation with law enforcement on or about January 19, 2005.  (Doc. 200.)  The government claims that defendant and a number of former co-defendants were manufacturing methamphetamine at a rural home in Greenwood County, Kansas.  Responding to a tip that defendant was at this residence, Greenwood County Sheriff Matthew Samuels and two deputies went to the house to investigate.  Sheriff Samuels entered the house.  Shortly thereafter, the government alleges that defendant shot the sheriff twice with a .44 magnum revolver at close range.  Sheriff Samuels died

as a result of those wounds.  (Doc. 200.)

Among other offenses, Count Five of the indictment charges defendant with murder through the use of a firearm during the commission of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1), (j)(1).  Count Six charges defendant with murder to prevent a witness from communicating to federal officials information relating to the commission of federal crimes, in violation of 18 U.S.C. § 1512(a)(1)(C).  The government's theory on Count Six is that defendant killed Sheriff Samuels to prevent him from informing federal officials that defendant was a felon in possession of firearms, that he knowingly possessed stolen firearms, and that defendant may have been involved in a bank robbery.  (Doc. 200 at 6.)  The crimes charged in Counts Five and Six each carry a sentence of death or life imprisonment.  Count Five, however, also allows for a sentence of imprisonment for any term of years.  The fact finder, presumably a jury in this case, could recommend a term of years sentence.  See 18 U.S.C. § 3593(e).  The procedural aspects of this case are governed in part by the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591 to 3598.

## II.   THE FEDERAL DEATH PENALTY ACT

The FDPA vests discretion in federal prosecutors to determine whether the government will pursue the death penalty for offenses that authorize capital punishment.[1]  18 U.S.C. § 3593(a).  If, in the event of a conviction, the government intends to seek the death penalty, it

---

[1] For a similar discussion of the FDPA's procedural requirements, see generally Jones v. United States, 527 U.S. 373, 376-79, 119 S. Ct. 2090, 2096-97, 144 L. Ed. 2d 370 (1999).

is required to give notice "a reasonable time before trial" that includes any aggravating factors prosecutors intend to prove as justifying execution.  Id.  If a conviction is obtained on a death-eligible offense, the trial proceeds into the second phase of a bifurcated procedure in which the government must prove a number of additional facts in order to vest the jury with discretion to recommend a death sentence.[2]  Id. § 3593(b).

First, as relevant here, the government must establish that the defendant had the mental state described in at least one of four gateway intent factors, which require proof that the defendant:

> (A) intentionally killed the victim;
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

Id. § 3591(a)(2)(A)-(D).

Next, in order for the jury to consider imposing a sentence of death, the government must prove the existence of at least one

---

[2] Under the FDPA, this penalty phase may be tried to a jury or to the court.  18 U.S.C. § 3593(b).  In this case, defendant has asserted his right to a jury trial, and in all likelihood, the parties will choose to have a jury make these sentencing determinations if defendant is convicted of murder.  Accordingly, for sake of brevity, the court will describe the procedure for the use of a jury, even though it is plausible that a jury might not be used for the penalty phase.

statutory aggravating factor enumerated in section 3592(c). Then, and only then, may the jury weigh the existence of any aggravating factors against any mitigating factors in order to arrive at a recommended sentence.   Id. § 3593(e).   The FDPA further limits the jury's discretion in this matter by stating that, once the initial conditions have been met to begin the weighing process,

> the jury . . . shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

Id.

The FDPA describes the aggravating and mitigating factors in section 3592. Although the FDPA lists a number of mitigating factors, it makes clear that the defendant may present, and the jury must consider, evidence on any mitigating factor.   Id. § 3592(a).   The act enumerates several aggravating factors applicable to homicides, such as the one in this case.   Id. § 3592(c).   However, the FDPA also authorizes, but does not require, the jury to consider any other aggravating factor for which notice has been given.   Id.   These additional aggravating factors are typically referred to as non-statutory aggravating factors.   Jones, 527 U.S. at 378 n.2, 119 S. Ct. at 2097 n.2.

With respect to burdens of proof, the act requires the government to prove to a unanimous jury, beyond a reasonable doubt, the gateway intent factors and any aggravating factors.   Id. §§ 3591(a)(2), 3593(c), (d).   By contrast, the burden is on the defendant to prove

-4-

mitigating factors, but only by a preponderance of the evidence. Id. § 3593(c). Moreover, any juror who concludes that the defendant has met his burden of establishing the existence of a mitigating factor may consider that factor in determining what sentence to recommend, notwithstanding the fact that other jurors may not believe that the mitigating factor has been proven - in other words, unanimity is not required for jurors to consider mitigating factors. Id. § 3593(d). However, unanimity is required to make a final recommendation regarding what sentence to impose. Id. § 3593(e).

## III. ANALYSIS

In this motion, defendant asserts that both the indictment and the NOI are constitutionally deficient because neither document sufficiently informs him of the factual basis for the allegations contained therein. Accordingly, he argues, proceeding to trial on such paltry notice violates his rights under the Due Process Clause of the Fifth Amendment. However, after defendant filed this motion, the government responded to a number of other defense motions attacking various aspects of this prosecution. In several of the response briefs, the government revealed a substantial amount of the factual allegations ungirding the charges and the aggravating factors at issue in this case. (Docs. 186, 187, 188, 231.)

A.   The NOI

The content of the NOI is governed by 18 U.S.C. § 3593(a), which provides, in relevant part, as follows:

> **Notice by the government.**--If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this

-5-

> chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice--
>
> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and
>
> (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

(Emphasis in original.)  By its own terms, the statute requires only that the government list the aggravating factors it intends to prove at trial.  No additional factual basis is required.  United States v. Taylor, 316 F. Supp. 2d 730, 741 (N.D. Ind. 2004); United States v. Edelin; 128 F. Supp. 2d 23, 42 (D.D.C. 2001); United States v. Nguyen, 928 F. Supp. 1525, 1549-50 (D. Kan. 1996).

Here, the NOI informed defendant that if he was convicted under either murder count listed in the indictment, the government would seek the death penalty.  (Docs. 133 at 1; 250 at 1.)[3]  The NOI also listed the gateway intent factors, statutory aggravating factors, and non-statutory aggravating factors that the government intended to prove in support of a death sentence.  The court finds that the NOI complied with the requirements set forth in 18 U.S.C. § 3593(a).  Defendant's motion on this point is accordingly DENIED.

B.  The Indictment

-----

[3] As directed in a previous order, the government filed an amended NOI.  (Doc. 250.)  From this point forward, the court will cite to the amended NOI, rather than the NOI applicable at the time this motion was filed.

-6-

Defendant argues that <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435(2000), and its progeny compel the conclusion that the gateway intent factors and <u>all</u> aggravating factors must be charged in the indictment.[4] (Doc. 144.)  In a previous order, the court rejected most of defendant's arguments regarding the impact of the <u>Apprendi</u> line of cases on an FDPA proceeding. (Doc. 247 at 13-17.)  The court still adheres to that decision.  One argument upon which the court found no need to rule was whether the <u>Apprendi</u> cases must be interpreted to make the Indictment Clause of the Fifth Amendment applicable to sentencing factors that increase the punishment above the statutory maximum.  <u>Id.</u> at 13.  Other courts have so held, <u>see, e.g.,</u> <u>United States v. Allen</u>, 406 F.3d 940, 943 (8th Cir. 2005); <u>United States v. Robinson</u>, 367 F.3d 278, 284 (5th Cir. 2004), and defendant advances that argument here.  Once again, the court concludes that it need not decide this issue. Assuming, without deciding, that all the factors necessary to make defendant eligible for the death penalty must be included in the indictment, the court finds that this requirement has been met in the present case.

The Fifth Amendment to the United States Constitution provides, in relevant part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, . . . nor be deprived of life, liberty, or property, without due process of law."  The Sixth Amendment further

---

[4] The cases expounding on <u>Apprendi</u> include <u>Blakely v. Washington</u>, 537 U.S. 101, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003), <u>Ring v. Arizona</u>, 536 U.S. 584, 609, 122 S. Ct. 2428, 2443, 153 L. Ed. 2d 556 (2002) and <u>Sattazahn v. Pennsylvania</u>, 537 U.S. 101, 110-13, 123 S. Ct. 732, 739-40, 154 L. Ed. 2d 588 (2003) .

mandates that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." An indictment will be deemed sufficient to satisfy these requirements

> "if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997). Furthermore, "[i]t is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." Hamling[ v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907, 41 L. Ed. 2d 590 (1974)] (quotations omitted).

United States v. Hathaway, 318 F.3d 1001, 1009 (10th Cir. 2003) (alterations in original); see also United States v. Gama-Bastidas, 222 F.3d 779, 785 (10th Cir. 2000); Tillman v. Cook, 215 F.3d 1116, 1132 (10th Cir. 2000). "The test of the validity of the indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." Gama-Bastidas, 222 F.3d at 785 (quoting United States v. Fitzgerald, 89 F.3d 218, 222 (5th Cir. 1996)). Furthermore, in evaluating the sufficiency of the indictment, "the entire document may be considered." United States v. Edmonson, 962 F.2d 1535, 1542 (10th Cir. 1992) (quoting United States v. Mobile Materials, Inc., 871 F.2d 902, 906 (10th Cir. 1989)).

The Tenth Circuit has held that the constitutional requirements for an indictment are embodied in Federal Rule of Criminal Procedure 7(c)(1). United States v. Salazar, 720 F.2d 1482, 1486 (10th Cir.

1983); <u>Mims v. United States</u>, 332 F.2d 944, 946 (10th Cir. 1964). That rule provides, in relevant part, that an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."

In addition to the substantive counts, the third superseding indictment charges the gateway intent factors and statutory aggravating factors in the following language:

### NOTICE OF SPECIAL FINDINGS

#### I.   The Grand Jury further finds that:

Pursuant to the provisions of Chapter 228 (Sections 3591 through 3598) of Title 18 of the United States Code, the following factors exist regarding defendant SCOTT D. CHEEVER and his commission of the offenses charged in Count 5 of this Third Superseding Indictment, that is, through the use of a firearm, the murder of Greenwood County Sheriff Matthew Samuels by shooting him with a firearm in violation of Title 18, Unites States Code, Sections [sic] 924(j)(1), and Count 6 of this Third Superseding Indictment, that is, the killing [of] Greenwood County Sheriff Matthew Samuels by shooting him with a firearm, with the intent to prevent the communication by Sheriff Samuels to a law enforcement officer or a judge of the United States of information relating to the defendant's commission or possible commission of the federal offenses of being a felon in possession of firearms; his possession of stolen firearms; and his possible involvement in a bank robbery, the allegations of which are fully re-alleged and incorporated herein by reference:

#### A.   Statutory Factors Enumerated under Title 18, United States Code, Section 3591(a).

**1.   Age of the Defendant.**  The defendant, SCOTT D. CHEEVER was 18 years of age or older at the time he committed the offense.

**2.   Mental State of the Defendant.**
a. The defendant, SCOTT D. CHEEVER intentionally killed Matthew Samuels[. ] Title 18, United

-9-

States Code, Section 3591(a)(2)(A).

b. The defendant, SCOTT D. CHEEVER intentionally inflicted serious bodily injury to Matthew Samuels, that resulted in Matthew Samuels's death. Title 18, United States Code, Section 3591(a)(2)(B).

c. The defendant, SCOTT D. CHEEVER, intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Matthew Samuels died as a direct result of that act. Title 18, United States Code, Section 3591(a)(2)(C).

d. The defendant, SCOTT D. CHEEVER, intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a result of the act. Title 18, United States Code, Section 3591(a)(2)(D).

**B. Statutory Factors Enumerated under Title 18, United States Code, Section 3592(c).**

**1. Grave risk of death to additional persons.** The defendant, SCOTT D. CHEEVER, in the commission of the offense, or in attempting to escape apprehension for a violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense. Title 18, United States Code, Section 3591(c)(5).

**2. Substantial planning and premeditation.** The defendant, SCOTT D. CHEEVER, committed the offense after substantial planning and premeditation to cause the death of a person, which resulted in the death of Matthew Samuels. Title 18, United States Code, Section 3591(c)(9).

**3. Multiple killings or attempted killings.** The defendant, SCOTT D. CHEEVER, intentionally killed or attempted to kill more than one person in a single criminal episode. Title 18, United States Code, Section 3591(c)(16).

(Doc. 200 at 10-12 (emphasis in original).) Both the gateway intent factors and the statutory aggravators substantially track the language

-10-

of the relevant statutory provisions, with the addition of the
identity of the defendant and Sheriff Samuels in appropriate places.

Defendant argues that, as alleged, the gateway intent factors and
the statutory aggravating factors lack any factual detail, thereby
depriving him of proper notice. (Doc. 144 at 3.) Turning first to
the gateway intent factors, the court finds that the language of the
indictment is sufficient to satisfy constitutional concerns. The
gateway intent factors merely allege the mental state of the defendant
with respect to the murder. Mental states are routinely alleged by
merely tracking the operative language of the relevant statute. See,
e.g., Hathaway, 318 F.3d at 1004 (defendant "knowingly and
intentionally" committed offense); Gama-Bastidas, 222 F.3d at 782
(same); Dashney, 117 F.3d at 1205 (same).

With respect to the other allegations in the gateway intent
factors related to defendant's having killed Sheriff Samuels,
inflicted serious bodily injury upon him, etc., the court finds that
the allegations contained in Counts Five and Six of the third
superseding indictment provide sufficient factual detail to put
defendant on notice of those charges against which he must defend.
Indeed, considering the Supreme Court's command that any fact that
increases the potential penalty faced by a defendant must be treated
as "the functional equivalent of an element of a greater offense."
Ring, 536 U.S. at 609, 122 S. Ct. at 2443 (quoting Apprendi, 530 U.S.
at 494, n. 19, 120 S. Ct. 2348), it seems obvious that allegations in
the gateway intent factors and the statutory aggravating factors ought
to be considered part and parcel with the substantive allegations in
Counts Five and Six because these additional factors relate solely to

-11-

the punishment dispensable following a conviction on either of those two counts. Thus, even if the court were not permitted to consider the entire indictment when evaluating the sufficiency thereof, Edmonson, 962 F.2d at 1542, there can be little doubt that the court would have to consider the gateway intent factors and the statutory aggravating factors in tandem with the substantive murder counts, even if these factors were contained in a separate section of the indictment, as they are here.

Turning next to the statutory aggravating factors, the court finds that they also satisfy constitutional concerns as written. The first factor, grave risk of death to additional persons, leaves only one question unanswered: who were the persons placed in grave risk of death? The fact that a grave risk of death was posed to someone can be fairly discerned from the other allegations in the indictment regarding defendant firing multiple rounds from a .44 magnum revolver and a .22 caliber target pistol at various law enforcement personnel who were attempting to apprehend him.

Although defendant is almost certainly entitled to know the identity of the persons who are the subject of this aggravator so that he can properly prepare his defense, that conclusion does not answer the question of whether the indictment is deficient for not having included the names of these individuals. As previously stated, the first test of the sufficiency of an indictment is whether it states all the elements of the crime charged. Hathaway, 318 F.3d at 1009. Treating aggravating factors as the "functional equivalent" of elements, it is clear that simply reciting the factor in the statutory language adequately lists this "element" in the indictment, and

-12-

certainly enables defendant to plead double-jeopardy as to any subsequent prosecutions for the murder of Sheriff Samuels.

Defendant's challenge to this aggravator is properly considered under the second requirement, that the indictment set forth the elements in unambiguous language. Id. Thus, the question presented is whether an indictment's failure to identify victims of an aggravating circumstance is fatal. The court concludes that it is not.

In analyzing whether an indictment adequately stated the essential elements of a charge, the Second Circuit has said,

> "[W]e have consistently upheld indictments that 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" [United States v. ]Walsh, 194 F.3d [37,] 44 [(2d Cir. 1999)] (quoting United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975)). The Supreme Court, however, has recognized a limitation on this practice, so that
>> "where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,--it must descend to particulars." United States v. Cruikshank, 92 U.S. 542, 23 L. Ed. 588 [1875].... "Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." United States v. Hess, 124 U.S. 483, 487, 31 L. Ed. 516 [1888].
>
> Russell [v. United States], 369 U.S. [749,] 765, 82 S.Ct. 1038.

-13-

United States v. Pirro, 212 F.3d 86, 92-93 (2d Cir. 2000).  In this case, the grave risk of death aggravator tracked the statutory language.  The balance of the indictment also removes any doubt regarding the date and time of the alleged offense.

Although defendant also cited Russell in support of his argument, the court finds that Russell was concerned with the ambiguity caused by statutory language using "generic terms."  Russell, 369 U.S. at 765.  In Russell, defendants were indicted for refusing to answer questions put to them by a congressional subcommittee.  Id. at 752.  The defendants were charged under 2 U.S.C. § 192, which makes it a crime to "refuse[] to answer any question pertinent to the question under inquiry" by the congressional body.  Id. at 752 n.2.  However, the indictment failed to identify the question under inquiry by the subcommittee.

In finding the indictment constitutionally deficient, the Court noted that "the very core of criminality under 2 U.S.C. s 192, 2 U.S.C.A. s 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer."  Id. at 765.  Having failed to inform the defendant of the central issue supporting the charge, the indictment failed to measure up to constitutional standards.  Id. at 771.

By contrast, the relevant portions of the indictment in this case charge defendant with murder.  It makes clear whom he murdered, and when the offense occurred.  While the aggravators are undoubtedly important to the sentencing phase outcome, they are not the central issue in the charged murder offenses, as was the case in Russell.  Moreover, the grave risk of death aggravator does not include the sort

-14-

of "generic terms" that seemed to bother the Russell Court.  There, the statute referred to "the question under inquiry."  Id. at 752 n.2. Congress can investigate almost anything.  Thus, the generic nature of this term is self-evident.

On the other hand, "grave risk of death" is a much narrower concept.  Given the facts alleged in the indictment, it is fairly clear that this risk arose from defendant's gun battle with police. Likewise, there were only a few people at the scene - several law enforcement officers and the individuals who were with defendant while he was allegedly manufacturing drugs at the residence.  As defendant ably pointed out in a separate motion, it would be duplicative to allow the government to allege the grave risk of death aggravator as to the law enforcement officers when it is clear from the indictment that this conduct is encompassed in the multiple attempted killings aggravator.  (Doc. 140 at 4.)  That leaves only the individuals who were helping defendant manufacture drugs as persons who could potentially be encompassed by the grave risk of death aggravator. Certainly this constitutes a much narrower pool of possibilities than that faced in Russell.  In sum, the court finds that the concerns that dictated the result in Russell do not apply in this case.

The Tenth Circuit has similarly distinguished Russell.  In Mims v. United States, the indictment charged that the defendant "did assault, intimidate and threaten" an aircraft pilot while in flight in air commerce.  332 F.2d at 945.  Distinguishing Russell, Mims said,

> The statutory words, "assault, threat and intimidation" are, to be sure, generic terms in the criminal law.  There are many species or classes of assault, threat and intimidation known to the criminal law, and an indictment or a

-15-

> statute which attempts to condemn or charge a
> violation of one of the species must allege the
> essential facts of the species charged. But, the
> species of assault, threat or intimidation is not
> an essential element of the offense charged here,
> and we do not think it requisite to the validity
> of this indictment that the Government specify
> the particular overt acts employed to consummate
> the offense. Our case is not like <u>Russell v.
> United States</u>, <u>supra</u>, where the indictment under
> 2 U.S.C. § 192 was fatally defective for failure
> to allege the subject matter of the congressional
> inquiry, as to which the question propounded was
> pertinent, or <u>United States v. Seeger</u>, <u>supra</u>,
> wherein the authority to inquire was deemed a
> material element of the offense. <u>In each of
> these cases, the indictments failed to allege the
> essential facts of a basic element of the
> offense</u>.

<u>Id.</u> at 946 (emphasis added). Thus when, as here, the omitted factual detail is not central to the underlying charge, the indictment will not be dismissed on sufficiency grounds.

Instead, when faced with questions about the identity of individuals referenced in an indictment, the remedy has generally been for the defendant to seek the information through a bill of particulars. <u>See, e.g.</u>, <u>United States v. Davidoff</u>, 845 F.2d 1151, 1155 (2d Cir. 1988); <u>Cefalu v. United States</u>, 234 F.2d 522 (10th Cir. 1956); <u>United States v. Urso</u>, 369 F. Supp. 2d 254, 272 (E.D.N.Y. 2005); <u>United States v. Vasquez-Ruiz</u>, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001). In <u>Cefalu</u>, the defendants were charged with jury tampering. The court noted that, although there were at least one hundred potential jurors in the effected venire panels, the indictment failed to identify any particular veniremen whom the defendants were alleged to have tried to influence. <u>Id.</u> at 524. The court of appeals found that a bill of particulars was the appropriate remedy to identify the veniremen in question. <u>Id.</u> at 524-25.

Cefalu's example is consistent with Tenth Circuit case law on this subject. "[A]n indictment may be sufficient on its face to state an offense, yet insufficient to adequately inform the accused of the charge against him to enable him to properly prepare his defense and, at least, to avoid prejudicial surprise." King v. United States, 402 F.2d 289, 292 (10th Cir. 1968). In that case, the proper remedy is a bill of particulars. See id. "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Dunn, 841 F.2d 1026, 1029 (10th Cir. 1988). Applying this rationale in Mims, the court of appeals said,

> It may be that the accused is entitled to a specification of the manner or means by which the assault, threat and intimidation were inflicted on the pilot of the plane, but the Government is not required to plead the factual details of the offense in the indictment. If such details are deemed necessary, in the discretion of the trial Court to enable the accused to properly prepare his defense, they may be supplied by a bill of particulars under F.R.Crim.P., Rule 7(f).

Mims, 332 F.2d at 946 (emphasis added).

In this case, however, the information that defendant would be entitled to seek regarding the grave risk of death aggravator has already been disclosed by the government in its response to a separate defense motion. (Doc. 186 at 3.) There, the government disclosed that the alleged victims under the grave risk of death factor were Darrell and Belinda Cooper, two of defendant's associates who were in the residence when defendant was firing shots at Sheriff Samuels and

-17-

his deputies.  Id.  "[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999).  That appears to be the law in the Tenth Circuit as well, where the court of appeals has affirmed denials of motions for bills of particulars when the defendant has already obtained the relevant information from the government through other disclosures. See, e.g., King, 402 F.2d at 292 (request for bill of particulars properly denied where government had disclosed information under Fed. R. Crim. P. 16); Mims, 332 F.2d at 947 (request for bill of particulars properly denied where defendant already possessed affidavit from complaining witness containing information sought by the defense).

In sum, the indictment was not deficient for failing to identify the alleged victims in the grave risk of death aggravating factor, and defendant has not been denied proper notice or due process since the information he seeks has already been disclosed to him by the government months before this case will actually come to trial. Moreover, the court will hold the government to its representations regarding the identity of the Coopers as the subject of this aggravating factor.  Thus, defendant will not be prejudiced in any way.  His motion on this point is accordingly DENIED.

Turning to the two remaining aggravators alleged in the indictment, the court finds that they have also been alleged with adequate detail to satisfy constitutional concerns.  The second factor, that defendant killed Sheriff Samuels after substantial planning or premeditation is the sort of clear, unambiguous allegation

-18-

that one would typically find in an indictment.  There can be little
doubt regarding what is meant by substantial planning, and the
allegation of premeditation is the type of mental state charge that
is routinely alleged using the operative words, alone.  See, e.g.,
Hathaway, 318 F.3d at 1004 (defendant "knowingly and intentionally"
committed offense); United States v. Bedonie, 913 F.2d 782, 791 (10th
Cir. 1990) (defendant "willfully, deliberately, maliciously and
premeditatedly murder[ed]" the victim).

     The multiple attempted killings aggravator was adequately alleged
because separate counts of the indictment actually charged defendant
with attempted murder of various law enforcement officers, as well as
discharging a firearm at those officers.  In a separate response, the
government confirmed the fact that the law enforcement officers
specifically identified in what are now Counts One, Seven, Eight, and
Nine of the third superseding indictment are the contemplated victims
of the multiple attempted killings aggravating factor.  (Doc. 186 at
3 & n.1.)  Reading the indictment as a whole, Edmonson, 962 F.2d at
1542, and considering the government's disclosures in its separate
response (Doc. 186), the court finds that this factor is adequately
alleged in the indictment.  Defendant's motion to the contrary is
DENIED.

     Finally, the court has already rejected defendant's argument that
non-statutory aggravators must be included in the indictment.  (Doc.
247 at 45-49.)  There, the court noted that, under the FDPA, a
defendant becomes death-eligible when the jury finds at least one
gateway intent factor and at least one statutory aggravating factor.
Non-statutory aggravating factors do not even enter the calculus until

-19-

a defendant has already been rendered eligible for the death penalty. Since these non-statutory aggravators do not increase the potential punishment beyond that which is permitted based on proof of the allegations in the indictment, they need not be included in the indictment. Defendant's arguments to the contrary are rejected.

With respect to defendant's argument that he requires additional detail regarding the factual bases supporting the non-statutory aggravating factors, the court notes that the government has provided significant additional detail in several of its responses to defense motions. (Docs. 186, 187, 188, 231.) Defendant has not asserted that these disclosures were inadequate, and the court finds that they provided an abundance of additional factual detail supporting the allegations in the indictment and the NOI. Absent some indication to the contrary, the court assumes that the government's disclosures have rendered defendant's request for additional factual detail and his request for a hearing MOOT.

IT IS SO ORDERED.

Dated this   18th   day of May 2006, at Wichita, Kansas.


                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE